O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: |
|---|---|

**Proceedings:**      IN CHAMBERS (No Proceedings Held)

## I.    INTRODUCTION

On July 8, 2003, Plaintiff Classified Cosmetics, Inc. ("Classified") filed suit against Defendant Del Laboratories, Inc. ("Del"), alleging that Del's "Sally Hansen Fast and Flawless Airbrush Makeup for all Skins" ("Fast and Flawless") and "Airbrush Legs" products (collectively, the "Airbrush Products") infringe Classified's United States Patent No. 6,589,541 ("the '541 patent"). On March 13, 2007, Classified obtained United States Patent No. 7,189,384 ("the '384 patent"). The '384 patent is a continuation of the '541 patent. Both patents cover "a method and apparatus for spraying makeup that masks imperfections in the skin including, but not limited to, freckles, tattoos, birthmarks, scars and post-laser surgery discoloration." (Declaration of James M. Smolinski in Opp'n to Def't's Motion for Summary Adjudication ("Smolinski Decl."), Ex. 4 ('541 Patent), Abstract; Ex. 3 ('384 Patent), Abstract).

On April 24, 2007, Classified filed a First Amended Complaint ("FAC") in which it added the '384 patent to its sole cause of action for patent infringement. In its Answer to the FAC, Del asserted three counterclaims for declaratory judgment that: (1) Del is not liable for infringement of any patents owned by Classified in connection with Del's Fast and Flawless line of products, and that the '541 patent is either invalid, unenforceable, or both; (2) Del is not liable for trade dress infringement, trade libel, or false advertising in violation of section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) in connection with Del's Fast and Flawless line of products; and (3) Del is not liable for trade dress infringement, trade libel, or false advertising in violation of California Business and Professions Code § 17000 *et seq.* in connection with Del's Fast and Flawless line of products.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | |

Del and Classified have filed cross-motions for summary adjudication of a variety of issues regarding the '384 patent. Del also seeks summary adjudication of its second and third counterclaims, based on the Lanham Act and state law. On April 7, 2008 the Court heard oral argument on the issue of Del's alleged infringement of the '384 patent.[1] On June 16, 2008, the Court held a hearing on Del's affirmative defense that the '384 patent is invalid due to obviousness. Subsequently, the Court invited supplemental briefing on the question of whether the presence of more than two vitamins in Del's formulas precludes literal infringement, assuming a single vitamin satisfies the element "a compound comprising a. . .vitamin."

For the following reasons, the Court:

(1) GRANTS Del's motion for summary adjudication that it did not infringe the '384 patent.
(2) DENIES Classified's motion for summary adjudication that Del's original Airbrush Legs formulation and Fast and Flawless product infringe the '384 patent.
(3) Declines to rule on the parties' cross motions for summary adjudication of Del's affirmative defense that the '384 patent is invalid as obvious.
(4) GRANTS Classified's motion for summary adjudication dismissing Del's affirmative defense that the '384 patent is unenforceable because Classified engaged in inequitable conduct.
(5) DENIES as moot Del's motion for summary adjudication of its counterclaims for declaratory judgment arising out of Classified's threats to file trade dress and unfair competition claims. Classified has withdrawn its threats.

## II.    BACKGROUND[2]

The parties are familiar with the facts and history of this case. Only the pertinent

---

[1]At the hearing, the Court circulated an early draft of section IV. The Court also circulated questions related to the issues discussed in section IV that the parties had not briefed.

[2]All facts are undisputed unless otherwise noted.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | |

and recently developed facts are recited here.


### A.    The Accused Products

Until recently, the parties focused on two accused products: the Fast and Flawless Airbrush Makeup and Airbrush Legs.  Now, there is a further distinction between the original and revised formulations of Airbrush Legs.  In October 2005, Del removed Tioveil, a micronized titanium dioxide-containing compound, from its Airbrush Legs formula, and began selling a new formulation under product number SKU #3703 in December 2006.  (Def't's Statement of Undisputed Facts ISO Del's Mot. for Summary Adjudication ("Del's SUF") ¶ 8; Pl.'s Statement of Genuine Issues In Opp'n to Del's Mot. for Summary Adjudication ("Classified's SGI") ¶ 8.)  Del continues to use the original formulation in a product called "Perfection" (SKU #3100).  (Classified's SGI ¶ 8.)[3]  Classified has not accused the new version of Airbrush Legs, SKU #3703, but it continues to allege that the original formulation infringes the '384 patent.  Therefore, Classified maintains that "Perfection" is an accused product.  In addition, Classified maintains that "NYC Face" is an accused product, because it uses the same formula as Fast and Flawless.[4]  For the purposes of these cross-motions for summary adjudication, the primary accused products are the Fast and Flawless and the original version of Airbrush Legs, which both contain a micronized titanium dioxide containing compound, Tioveil.  (*See* Declaration of James M. Slominksi In Opp'n to Def't's Mot. ("Slominski Decl."), Ex. 43 (Declaration of Kara Curry)).

### B.    The '384 Patent

The '384 patent contains four claims.  Claim 1 is an independent claim.  Claims 2,

---

[3]The original Airbrush Legs carries the product number SKU #3103.  "Perfection" (SKU #3100) has the same formula as SKU #3103 and is a "private label" for Walgreens drugstores.  (Declaration of James M. Slominksi In Opp'n to Def't's Mot., Decl., Ex. 15 (Deposition of Marie Luciano 406:9-408:9).)

[4]It appears NYC Face is sold only in Canada.  (*Id.*, Ex. 22.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | |

3, and 4 are dependent claims.[5]

### 1. Claim 1

Claim 1 reads:

1. A sprayable system for applying a thin layer of particularized cosmetic, the system comprising:
  a pressurized container;
  an actuator;
  a propellant; and
  a cosmetic composition consisting of:
      from about 5.0 to 70.0 percent by weight water;
      from about 0.1 to 3.0 percent by weight of an electrolyte;
      from about 1.0 to about 20.0 percent by weight of a cyclomethicone and
          dimethicone copolyol compound;
      from about 0.5 to about 10.0 percent by weight of a polyglyceryl-4 oleate
          and peg-8 propylene glycol cocoate compound;
      from about 0.5 to about 10.0 percent by weight of a quaternium-18
          hectorite, cyclomethicone, and propylene carbonate compound;
      from about 1.0 to about 20.0 percent by weight of a micronized titanium
          dioxide containing compound;
      from about 0.1 to about 5.0 percent by weight of synthetic wax;
      from about 0.5 to about 50 percent by weight of cyclomethicone;
      from about 3.0 to about 20.0 percent by weight of metal oxides;
      from about 0.0 to about 10.0 percent by weight of botanicals;
      from about 0.0 to about 5.0 by weight of panthenol;
      from about 0.0 to about 10.0 percent by weight of di-propylene glycol;
      from about 0.0 to about 5.0 percent by weight of a compound comprising a
          first vitamin;
      from about 0.0 to about 5.0 percent by weight of a compound comprising a

---

[5]A "dependent claim" is a claim that makes express reference to and depends on a prior claim and, thereby, incorporates by reference all of the recitals of the prior claim. *See* U.S. Patent & Trademark Office, Glossary, *available at* http://www.uspto.gov/main/glossary/index.html#d (last visited May 8, 2008).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | |

                second vitamin;
from about 0.0 to about 15.0 percent by weight of talc;
from about 0.0 to about 3.0 percent by weight of silica silyate; and
preservatives in a quantity sufficient (QS) to produce 100 percent by weight of
                composition.

('384 Patent, col. 8, line 30 - col. 9, line 5.)

      As to the primary accused products, only the status of the so-called vitamin elements is disputed. Other than the vitamin elements, there is no dispute that the cosmetic compositions of the Fast and Flawless product and the original version of Airbrush Legs contain every other listed component in a concentration within the range indicated in claim 1. (Classified's SUF ¶¶ 21-28; Del's SGI ¶¶ 21-28.).[6]

      The vitamin elements appear in two clauses in claim 1: "from about 0.0 to about 5.0 percent by weight of a compound comprising a first vitamin" and "from about 0.0 to about 5.0 percent by weight of a compound comprising a second vitamin." ('384 Patent, col. 8, ll. 64-67.) These vitamin elements are optional components of the cosmetic composition because the low range of the specified concentration is zero. ('384 Patent, Fig. 3 (listing the "optional components"); Pl.'s Statement of Additional Facts ISO Cross-Motion for Summary Adjudication ("Classified's SUF") ¶¶ 34-35; Def't's Statement of Genuine Issues In Opp'n to Classified's Mot. for Summary Adjudication ("Del's SGI") ¶¶ 34-35.)

      Del's Fast and Flawless product contains vitamin A, C, and E, and its Airbrush Legs product contains those vitamins as well as vitamin K. (Del's SUF ¶¶ 1-2; Classified's SGI ¶¶ 1-2.) Stated by their various chemical names, Del's formulas contain:

---

      [6]In its opening brief, Del asserted that it is entitled to summary adjudication of noninfringement because it removed Tioveil, a "micronized titanium dioxide containing compound" from its Airbrush Legs product. (Del's Mem. at 14.) However, as noted above, the revised version of Airbrush Legs is not an accused product, and there is uncontroverted evidence that Del continues to use the original Airbrush Legs formulation in the product named "Perfection." (Classified's SGI ¶ 8.)

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | |

(1) magnesium ascorbyl phosphate (vitamin C),
(2) retinyl palmitate or 500849 Vitamin A (vitamin A),
(3) tocopheryl acetate or Vitamin E acetate (vitamin E), and
(4) phytonadione (vitamin K).

      The vitamins are present in the cosmetic composition of Del's accused products in extremely small concentrations: 0.001% by weight of vitamin C, 0.1% by weight of vitamin A, 0.1% by weight of vitamin E, and 0.01% by weight of vitamin K1. (Classified's SUF ¶¶ 29-32; Del's SGI ¶¶ 29-32.)  In the manufacture of Del's products, "each vitamin is added to the formula as a separate ingredient, and as a separate commercial product, and no two vitamins are included together in any 'compound' or 'mixture.'"  (Del's SUF ¶ 3.)  According to Classified, "the vitamins become a mixture of vitamins when they are blended together in the final cosmetic compositions. . . ." (Classified's SGI ¶ 3.)  Classified maintains that when added together, the mixture of vitamins in the accused products has a combined concentration of less than five percent by weight – within the range specified in the claim.  (Classified's SUF ¶ 38.)  Del maintains that although its chemical compositions contain those vitamins, with a combined concentration of less than five percent by weight, the vitamins "are not present in the composition in a mixture."  (Del's SGI ¶ 38.)

      2. Claims 2-4

      Claims 2-4 read:
2. The sprayable system of claim 1 wherein said metal oxides comprise titanium dioxide and iron oxides.
3. The sprayable system of claim 1 wherein said first vitamin comprises vitamin E.
4. The sprayable system of claim 1 wherein said first vitamin comprises vitamin A.

('384 Patent, col. 10, ll. 1-4.)

### C.  Prosecution History of the '384 Patent

      The prosecution history for the claims that were the precursors to claims 1-4 of the '384 patent can be summarized as follows.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
| --- | --- | --- | --- |

| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* |
| --- | --- |

1. Examiner action dated December 30, 2003 and Classified's response.

Classified filed an application to register the '384 patent on June 13, 2003. Based on the incomplete prosecution history reflected in documents filed by the parties, that application appeared to contain 40 claims. On December 30, 2003, in a non-final action, the Examiner denied the application, stating, in pertinent part:

> Singleton et al. exemplify a skin foundation containing the same ingredients as claimed in the instant Claims 22, 23 and 25-31. See col. 11, Table 3. With respect to the concentrations of the ingredients, all concentrations exemplified by Singleton et al. fall within the claims ranges. With respect to Claim 24, Singleton et al. teach that their compositions may contain [alpha]-hydroxy acids. See col. 1, lines 50-54. Thus Singleton et al. teach each and every limitation of Claims 22-31.

(Declaration of Brian K. Brookey ISO Def't's Mot. for Summary Adjudication ("Brookey Decl."), Ex. F, at 18.) The Examiner went on to state that claims 32-40 were unpatentable because they were obvious, in view of Singleton alone or Singleton and Shaw. (*Id.* at 19-20.)

On May 26, 2004, Classified filed a response stating that claims 1-21 were cancelled and setting forth claims 22-40 with amendments, along with arguments about why claims 22-40 should be approved. (*See* Brookey Decl., Ex. F.) Of those claims, claims 22 and 32 are the independent claims; the remainder are dependent claims. Claim 22 disclosed a "cosmetic composition comprising" a list of components by weight. (*Id.* at 4.) Claim 32 disclosed a "sprayable system for applying a thin layer of particularized cosmetic, the system comprising: a pressured container; an actuator; a propellant; and a cosmetic composition comprising of" a list of components by weight. (*Id.* at 5-6.)

2. Examiner action dated May 12, 2006 and Classified's response.

The record before the Court is not clear as to what, if anything, occurred between May 26, 2004 and May 12, 2006. In the record are portions of the Examiner's non-final action dated May 12, 2006, in which the Examiner rejected claims 22-40, 59, 61 and 64

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | |

because of anticipation, much as what she had done in December 2003.[7]  (*See* Slominski Decl., Ex. 48, at 4).  The Examiner also rejected claims 32-40 and 62-64 as obvious in light of Singleton alone or Singleton and Shaw, for the exact same reasons, verbatim, as the Examiner gave in December 2003.  (*See id.* at 4-5.)

In a response dated June 19, 2006, Classified modified independent claims 22 and 32 and proposed a new independent claim 65.  (Brookey Decl., Ex. C, at 1-7.)  New claim 65 was extremely similar to claims 22-40, with the primary difference being that instead of a cosmetic composition "comprising of" certain components, it claimed "a cosmetic composition *consisting of*. . ." certain components.  In response to the Examiner's rejection of claims 32-40 and 62-64 for obviousness, Classified pointed out the omission of salicylic acid in its claimed composition (*id.* at 12) and highlighted its use of the term "consisting of":

> In the Examiner's office action of February 8, 2005, the Examiner invited Applicant "to use the phrase 'consisting' of in order to exclude the additional ingredients of Singleton et al.". . .[T]he Examiner advised that such a claim could not exclude components that are disclosed in the specification as necessary parts of the invention, but could exclude components identified as being 'optional.'
> New claim 65 is such a claim in which the cosmetic composition is claimed using the phrase "consisting of" so as to exclude the additional ingredients of Singleton particularly salicylic acid **[sic]**. . ..

(*Id.* at 13.)

3. Examiner action dated October 12, 2006 (Final Action).

In the final action dated October 12, 2006, the Examiner rejected claims 22, 25-32 and 34-40, but allowed claims 65-68.  (Slominski Decl., Ex. 37.)  Claims 65-68 issued as claims 1-4 in the '384 patent.  (Classified's SGI ¶ 11.)  According to the Examiner's "Statement of Reasons":

---

[7]The same Examiner evaluated Classified's patent application from 2003 to 2006.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | |

> Claims 65-68 are allowable over the cited prior art because the prior art does
> not teach, disclose nor make obvious the claimed sprayable system
> comprising a pressurized container, an actuator, a propellant and a cosmetic
> composition <u>consisting of</u> the listed ingredients.  The compositions of the
> cited prior art contain additional ingredients such as salicylic acid."

(Slominski Decl., Ex. 37 at 4 (emphasis in original).)

### D.   Claim Construction in this Litigation

For the '541 patent, the Court conducted a *Markman* hearing construing nine
disputed terms and issued a *Markman* Order on June 14, 2004.  The claim construction
dispute in that proceeding centered on the word "micronized," not "compound."  In that
order, the Court wrote: "micronized titanimum dioxide-containing compound" means "*a
mixture of two or more components,* one of which is a micronized form of titanium
dioxide." (*Markman* Order, Jun. 14, 2004, at 7, emphasis added.)

After Classified filed its amended complaint, which asserted the '384 patent in
addition to the '541 patent, neither side requested a *Markman* proceeding for the '384
patent.  In a Joint Status Report filed May 7, 2007, Classified stated that "[t]he '384
patent introduces no new claim terms."  In its motion seeking a preliminary injunction
based on alleged infringement of the '384 patent in July 2007, Classified argued, and the
Court agreed for the purposes of that motion, that the claim elements mean "a mixture of
two or more components including a first vitamin."  (Minute Order, Jul. 9, 2007, at 4).
The parties also agreed for the purposes of the current cross-motions for summary
adjudication that no new claim terms need to be construed.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the
pleadings, depositions, answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."  The moving party bears the
initial burden of demonstrating the absence of a "genuine issue of material fact for trial."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  A fact is material if it could

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | |

affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.*; *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | | Date | August 20, 2008 |
|---|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | | |

## IV. INFRINGEMENT

Plaintiff bears the burden of proving infringement at trial. Classified relies only on literal infringement and does not invoke the doctrine of equivalents.[8]  Literal infringement of a claim exists when each of the claim limitations is found in the accused product. *Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1357 (Fed Cir. 2002).  To prevail at trial, Classified must prove that Del's accused products contain the ingredients listed in the cosmetic composition and no additional ingredients because the claim describes a closed list of components (as explained below).  Del may prevail on its motion for summary adjudication by showing that the required ingredients listed in the chemical composition are not present in its products or that its products contain additional ingredients.  Del can meet its burden on its motion by pointing to the absence of any evidence from Classified as to a necessary element of literal infringement.  For Classified to win its cross-motion, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.

### A.    The Parties' Arguments Concerning the Vitamins

At the outset the Court notes that the parties' respective arguments rely heavily on terms of art in the '384 patent.  The U.S. Patent & Trademark Office ("USPTO") has defined and characterized certain key terms as follows:

> The transitional term "comprising", which is synonymous with "including," "containing," or "characterized by," is inclusive or open-ended and does not exclude additional, unrecited elements or method steps. "Comprising" means the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.
> The transitional phrase "consisting of" excludes any element, step, or ingredient not specified in the claim.
> The transitional phrase "consisting essentially of" limits the scope of a claim to the specified materials or steps "and those that do not materially

[8]Del argued in its opening brief, and Classified did not contest, that Classified is limited by prosecution history estoppel from asserting infringement under the doctrine of equivalents.  (*See* Mot. at 16.)

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | |

affect the basic and novel characteristic(s)" of the claimed invention.  A claim which depends from a claim which "consists of" the recited elements or steps cannot add an element or step.  When the phrase "consists of" appears in a clause of the body of a claim, rather than immediately following the preamble,[9] it limits only the element set forth in that clause; other elements are not excluded from the claim as a whole.

Manual of Patent Examining Procedure ("MPEP"), § 2111.03 (2006).

There is no factual dispute that Del's accused products contain vitamins.  The parties disagree only on whether those vitamins read on the claim limitations or instead preclude literal infringement.

In the course of these summary adjudication proceedings, Classified has asserted several theories concerning Del's vitamins.  Proceeding from the construction of "compound" as "a mixture of two or more components," Classified first argued that Del's vitamins satisfy the claim limitations because there is a mixture of vitamins in the final cosmetic composition of Del's products.  According to Classified, there is no requirement that the vitamins be "pre-mixed" before they are added to the cosmetic composition and the vitamins are in a compound because the cosmetic composition itself is the mixture. In response to that theory, Del maintained that these claim limitations require that the vitamins be in a "compound" before they are added to the composition.  Because there is no evidence of such a compound, Del's vitamins are *additional* ingredients.  According to Del, because the vitamins are additional ingredients not encompassed by any of the listed components of the claim, and because the claim describes a closed list of ingredients, its products do not infringe.

At oral argument, Classified offered a second theory why Del's vitamins read on

---

[9]A preamble is the "formal introductory clause of a patent claim."  It states the name of the inventor, the title of the design, and a brief description of the nature and intended use of the invention that the design is connected to.  *See* U.S. Patent & Trademark Office, A Guide to Filing a Design Patent Application, *available at* http://www.uspto.gov/web/offices/pac/design/definition.html (last visited August 20, 2008).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | |

the vitamin elements.  Classified's counsel rejected the previously accepted notion that the compound – the mixture – must have two or more components and argued instead that a compound can have just one element.  (Transcript, Apr. 7, 2008, at 9:20-10:8.)   He contended that because of the use of the open-ended word *"comprising,"* the claim is satisfied by either a single vitamin or a vitamin plus one or more additional components, so long as the additional components are consistent with the vitamin's purposes as described in the specification (*i.e.*, antioxidation, moisturization).  (Tr. 8:10-13.)  Classified reiterated this theory in its recent supplemental brief: "compound comprising a. . .vitamin" (col. 8, l. 65) may be satisfied by a single vitamin but is not restricted to a single vitamin, because "the word 'comprising' expressly permits the inclusion of multiple vitamins." (Pls.' Supp. Brief at 1.)  In response, Del took the position that if a single vitamin satisfies the claim limitation, then any vitamins beyond the first and second vitamin are additional ingredients excluded by the closed "consisting of" list of ingredients (col. 8, l. 36).   Therefore, Del points out, it would follow that Del's products do not infringe because they contain three or four vitamins.

Finally, in its brief opposing Del's motion and supporting its cross-motion, Classified asserted that the vitamins in Del's products are mere impurities that cannot be considered additional ingredients.  If Classified's "impurity" theory is construed as an alternative to its initial theory that the vitamins evidence infringement, then either the vitamins satisfy the vitamin elements or they are impurities that may be disregarded as a matter of law.  In the first scenario, Del's products infringe because the vitamins read on the claim limitations.  In the second scenario, they do not read on claim limitations and they may be disregarded, leaving an allegedly infringing formula that would lack the optional vitamin elements.  In response to this argument, Del notes that it seems contradictory to argue both that the vitamins are in a compound and that they are ineffectual impurities.  In its sur-reply, Classified did not address the perceived contradiction.  It did emphasize that the vitamin elements are not required components, because their low range is zero.

## B.     The Vitamins Are Not "Impurities"

One of Classified's theories of literal infringement is that Del's vitamins are ineffectual impurities that may be disregarded, leaving a Del formula that infringes Classified's patent because the vitamin elements are optional anyway and all the other

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|

| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* |
|---|---|

components are undisputed.  If this theory were correct, then it would not be necessary to determine whether the vitamins match the claim limitations.

The parties do not dispute that claim 1 does not include any components not specified, because it recites "a cosmetic composition *consisting of*. . . ."  "The phrase 'consisting of' is a term of art in patent law signifying restriction and exclusion . . . . In simple terms, a drafter uses the phrase 'consisting of' to mean 'I claim what follows and nothing else.'" *Vehicular Technologies Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1382-83 (Fed. Cir. 2000); *see also* MPEP § 2111.03 (2006).  The Patent Examiner specifically invited Classified to use the phrase "consisting of" in order to distinguish the '384 patent from the Singleton prior art, which contained additional ingredients. (Brookey Decl., Ex. C, p. 39.)  In a letter Classified wrote to the Patent Examiner, Classified acknowledged the Patent Examiner's suggestion and stated that "the cosmetic composition is claimed using the phrase 'consisting of' so as to exclude the additional ingredients of Singleton, particularly salicyclic acid."  (*Id.*)  In approving this amended claim, the Patent Examiner stated that the claim was allowable over Singleton because Singleton "does not teach, disclose nor make obvious the claimed sprayable system comprising a pressured container, an actuator, a propellant and a cosmetic composition consisting of the listed ingredients. The compositions of the cited prior art contain additional ingredients such as salicyclic acid."  (Slominski Decl., Ex. 37, p. 215 (emphasis in original).)

In light of the fact that its own claim is closed, Classified argues that the vitamins are not additional ingredients precluding infringement, pointing to uncontroverted evidence that the vitamins A, C, E, and K in Del's products are present in minute, non-functional amounts and that they were added to the cosmetic compositions solely for marketing purposes.  Under *Conoco, Inc. v. Energy & Environmental Int'l, L.C.*, 460 F.3d 1349 (Fed. Cir. 2006), according to Classified, because these vitamins are impurities, *not additional* ingredients, they are included within the closed claim.

Classified misapplies *Conoco* in trying to circumvent the restrictive "consisting of" limitation.  In *Conoco*, the Federal Circuit noted that "consisting of" "close[s] the claim to the inclusion of materials other than those recited except for impurities ordinarily associated therewith."  *Id.* at 1360.  The claimed invention in *Conoco* was directed to a process by which drag reducing particles could be suspended in a water or water-alcohol

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|----------|----------------------|------|-----------------|

| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* |
|-------|------|

liquid medium. *Id.* at 1353. The defendant admitted that its product contained all of the ingredients in the patent claim's "consisting of" list (water and alcohols), but it contended that it avoided infringement because the product also contained an extra ingredient, methyl isobutyl ketone ("MIBK"). *Id.* at 1355. MIBK is a chemical commonly added to industrial alcohols to make them unfit for human consumption and thereby exempt them from liquor taxes. *Id.* at 1360-61. Because of this purpose and function, the district court found, MIBK was an impurity. *Id.* at 1361. The court based its findings on the testimony of persons of ordinary skill in the art who testified that MIBK had little to no effect on the present invention and was normally associated with industrial alcohols to reduce tax liability. *Id.*

The Federal Circuit affirmed, stating: "impurities that a person of ordinary skill in the relevant art would ordinarily associate with a component on the 'consisting of' list do not exclude the accused product or process from infringement." *Id.* at 1360. The Federal Circuit further clarified that even though MIBK was intentionally added to denature the alcohol to make it unfit for human consumption, it was still an "impurity ordinarily associated" with industrial alcohols. *Id.* It further stated: "impurities normally associated with the component of a claimed invention are implicitly adopted by the ordinary meaning of the components themselves." *Id.* at 1361.

As Del has pointed out, there is no evidence that vitamins A, C, E, and K are ordinarily associated with any of the listed components in the cosmetic composition disclosed in claim 1, unlike in *Conoco*, where the MIBK was commonly associated with industrial alcohols. Thus, for example, there is no evidence showing that a person of ordinary skill in the chemistry of cosmetic products would associate vitamin A with cyclomethicone, or vitamin C with metal oxides.

Classified argues that *Conoco* only requires that the alleged additional ingredient be associated with some component of the patent claim, rather than a component on the "consisting of" list. It was just coincidence, it argues, that MIBK happened to be associated with a component on the "consisting of" list in *Conoco*. Classified relies on the Federal Circuit's statement that "impurities normally associated with the component of a claimed invention are implicitly adopted by the ordinary meaning of the components themselves." *Id.* at 1361. In Classified's view, the "cosmetic composition" is a component of the claim, and vitamins are commonly added to cosmetic compositions

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | |

without having any functional impact on the invention.  *Ipso facto*, vitamins are impurities.

     The first problem with Classified's argument is that its evidence does not show that a person of ordinary skill in the relevant art would normally associate any of these vitamins with a spray-on makeup composition in a manner that would render them impurities under *Conoco*.  Classified's expert on chemistry in the field of personal care products, Mort Westman, merely stated that manufacturers commonly include small amounts of ingredients such as magnesium ascorbyl phosphate and vitamin K1 so that they can market the product as containing "Vitamin C" or "Vitamin K," but neither ingredient has any functional effect on the product.  (Slominski Decl., Ex. 27 (Supplement to the Expert Report of Mort Westman ¶ 5).)  That fact does not suggest any chemical relationship between the vitamins and cosmetic compositions that would make a person of skill think of the vitamins as "impurities normally associated with" cosmetic compositions.  To characterize as an impurity *ipso facto* a trace ingredient inserted into a cosmetic product for purely marketing purposes stretches beyond recognition the concept of impurities in chemical patents.  *Cf. Norian Corp. v. Stryker Corp.*, 433 F.Supp.2d 1051, 1055 (N.D. Cal. 2004) ("'Consisting of' limits the scope of claims 8-10 of the '065 patent to a solution containing water and sodium phosphate, but no other chemical compounds aside from trace impurities."); *Sakano and Toda v. Rutemiller*, 158 U.S.P.Q. 47, 51 (Pat. Off. Bd. Pat. Int. 1968) (approving patentee's contention that the expression "consisting of" does not close off claim to the presence of impurities originally associated with aluminum, which always contains small percentages of impurities, usually iron, silicon and traces of nitrogen, copper, carbon and possibly zinc.)

     This leads to a second, more fundamental problem with Classified's argument.  The Federal Circuit clearly indicated in *Conoco* that only ingredients "ordinarily associate[d] *with a component on the 'consisting of' list*" are considered to be within a closed claim.  *Conoco, Inc.*, 460 F.3d at 1360 (emphasis added).  The reason the impurity must be attached to a listed ingredient is obvious: if any additional ingredient could be added to a chemical composition with little or no effect on the invention and still be considered within the scope of the claim, the restrictive phrase "consisting of" would be meaningless.  In effect, Classified interprets "consisting of" to describe a more open claim than it does; it treats it like "consisting essentially of," which closes a claim to unlisted ingredients other than those that "do not materially affect the basic and novel

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | |

properties of the invention." *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1239 (Fed. Cir. 2003) (quotation marks and citation omitted). To obtain approval of its patent application, Classified used "consisting of" to close the cosmetic composition to unlisted ingredients, not "consisting essentially of."

### C.    Del's Vitamins Do Not Read on "Compound Comprising A First Vitamin" and "Compound Comprising A Second Vitamin."

Classified has produced no evidence that the vitamins are impurities that may be disregarded as a matter of law. Therefore, unless the vitamins read on the vitamin elements in claim 1, then they are additional ingredients not listed in Classified's closed "consisting of" list of components and thus Del's products would not infringe. However, if the vitamins *do* read on the vitamin elements, then the vitamins are *not* additional ingredients, and thus Del's products *would* infringe (because all the other required components, including micronized titanium dioxide containing compound, are present in the formulas). For the reasons set forth below, the Court concludes that Del's vitamins do *not* read on the vitamin elements under either theory that Classified offers.

#### 1. There is no evidence that Del's vitamins are in a "mixture of two or more components."

Classified's initial theory for why Del's vitamins match the vitamin elements was that the vitamins are present in a mixture, the final product. This theory was based on a definition of the term "compound" that the parties derived from the Court's Markman Order. In that order, the Court wrote: "micronized titanimum dioxide-containing compound" means "*a mixture of two or more components,* one of which is a micronized form of titanium dioxide." (Markman Order, Jun. 14, 2004 at 7 (emphasis added). Applying that definition of "compound," the elements at col. 8, lines 64-67 may be phrased as "a mixture of two or more components including or containing a first and/or vitamin." In its first brief, Classified argued that these lines of the claim mean "a mixture of two or more components at least one of which is a vitamin." (Opp'n at 13.)

Classified has no evidence that the Del vitamins are in a compound -- *i.e.*, in a mixture of two or more components -- before they are joined with the other elements of the cosmetic composition. But Classified argues that there is no requirement that the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|

| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* |
|---|---|

vitamins be "pre-mixed" before they are added to the cosmetic composition. According to Classified, the vitamins <u>are</u> in a compound because they are in a mixture -- the "cosmetic composition" itself.

If, as Classified proposes, the claim only refers to the mixing of vitamins with the other elements of the cosmetic composition, the term "compound" is superfluous. "While not an absolute rule, all claim terms are presumed to have meaning in a claim." *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1119 (Fed Cir. 2004). Classified provides no reason for treating "compound" as meaningless surplusage. Yet its contention that the compound -- the mixture -- exists in the final product reads the term "compound" out of those claim limitations altogether. Put differently, Classified's argument equates "compound" with "cosmetic composition" (col. 8, l. 35).

Classified's legal arguments are unpersuasive. Classified cites *Mars, Inc v. H.J. Heinz Co.*, 377 F.3d 1369 (Fed. Cir. 2004) for the proposition that a mixture of ingredients becomes a mixture at the time they are mixed together ("a chemical composition exists at the moment the ingredients are mixed together," *id.* at 1375 (quoting *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1558 (Fed. Cir. 1995)). That proposition does not take Classified to its desired conclusion, because the problem here is that these two elements -- *i.e.*, those at column 8, lines 64-67 -- are themselves mixtures, or compounds. In *Mars*, there was no ingredient that was itself a compound. It primarily addressed claim construction for the word "ingredients," not the question of whether a compound which is a component of a chemical composition is supposed to exist before the moment it is mixed with other components. *See id.* at 1373-74.

Classified argues that Del's interpretation of the claim transforms it from a product claim to a method claim. As Classified characterizes Del's argument, whereas the patent claims an aerosol spray apparatus containing a cosmetic composition, Del is asserting that the patent claims a recipe for making the claimed product, a recipe that requires "pre-mixing" of components into a compound before adding it to the cosmetic composition. Classified's reliance on *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553 (Fed. Cir. 1995) is misplaced. Although Classified is correct that the Federal Circuit rejected Exxon's theory that a recipe for making the product is the same as the product

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | |

itself and that whether the specified ingredients could be found in the actual composition is irrelevant, *see id.* at 1557, Del is not using that theory. Del's position is simply that its vitamins are not the same as "a compound comprising a . . . vitamin" unless those vitamins are found in a compound in the actual composition. Del is not claiming a process for when or how that compound came into being.

The authorities Classified cited in its supplemental brief filed on June 27, 2008 for the definition of a product claim do not relieve it of its burden to show that the vitamins exist in relation to a "compound" other than the chemical composition itself. It is correct that a pure product claim recites the invention by its structural characteristics, *i.e.*, the presence of specified components in the final product, not by how the product is made. *See* CHISUM ON PATENTS (2008) § 8.05 (distinguishing product-by-process claims from true product claims); *AFG Industries, Inv. v. Cardinal IG Co., Inc.*, 375 F.3d 1367, 1370 (Fed. Cir. 2004). Using this concept, Classified characterizes the vitamins themselves as the specified components of the final product. That is incorrect; the vitamin is not itself a direct component of the cosmetic composition. The component is "a *compound* comprising a. . .vitamin." ('384 Patent, col. 8, ll. 65, 67, emphasis added.) Hence, Classified must show that a compound -- not simply a vitamin -- is present in the final product.

> 2. If a "compound comprising a . . .vitamin" can be a single vitamin, any vitamins beyond a first and second vitamin would be excluded by the closed "consisting of" list.

Following the April 7, 2008 hearing, Classified abandoned the view that the compound (or mixture) must contain two or more components and invoked a different theory: The compound may contain a single vitamin *or* multiple vitamins. Specifically, each "compound comprising" claim limitation is satisfied by either a single vitamin or a vitamin plus one or more additional components (such as additional vitamins), so long as the additional components are consistent with the vitamin's purposes as described in the specification (*i.e.*, antioxidation, moisturization). (Apr. 7, 2007 Tr. 8:10-13.) According to Classified, this is possible because the word "comprising" permits the compound to include additional, unrecited ingredients. Classified makes this argument because Del's accused products contain more than two vitamins: Fast and Flawless contains vitamins A, C, and E, while Airbrush Legs contains vitamins A, C, E, and K.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|

| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* |
|---|---|

Classified articulated this theory of infringement following the Court's suggestion that its *Markman* construction of "compound" was not controlling, because that construction was in the context of "micronized titanium dioxide containing compound." Here, "compound" is used differently.[10]  At the hearing on April 7, 2008, the Court observed, and Classified agreed, that the vitamins *retinyl palmitate* (vitamin E) and *tocopheryl acetate* (vitamin A) are used to refer to those compounds in the cosmetic compositions in *both* the '541 and '384 patents.  For example, the descriptive "Figures" in the '384 patent equate "compound comprising a. . . vitamin" with vitamins A and E. Figure 3 (on which claim 1 is based)[11] displays in chart format the claimed ranges of the required and optional components of the cosmetic composition.  The listed "optional components" include tocopheryl acetate and retinyl palmitate, which take the place of "compound comprising a. . . vitamin" in the list.  Figure 4 displays a sample cosmetic composition containing 0.1% tocopheryl acetate and 0.1% retinyl palmitate.  (The '541 patent contains identical Figures 3 and 4.)  Hence, the patent specification suggests that the vitamin elements are satisfied by retinyl palmitate and tocopheryl acetate (although not necessarily by only those vitamins).  As the Court further noted at the April 7 hearing, if "comprising" is understood to mean "characterized by," MPEP § 2111.03, then a "compound" could be "characterized by" a single vitamin.  Thus, there is support in the claim language and the patent specification for a single vitamin matching either of the limitations on lines 65 and 67.

---

[10]The presumption that the same claim term in the same patent or related patents carries the same construed meaning does not necessarily apply if the term is used differently.  *Cf. Omega Engineering, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) (approving application of same construed meaning to the term "to outline" where it was used in the following ways: "to outline the energy zone," "outline visibly" the energy zone, "to outline visibly the periphery").

[11]During the prosecution of the patent, Classified specifically asserted that claim 1 is based on the composition described in Figure 3.  Declaration of Brian K. Brookey ISO Def't's Mot. for Summary Adjudication ("Brookey Decl."), Ex. C, p. 39 ( "New claim 65 [now claim 1] is based on the composition disclosed in Figure 3, including both the base components and the optional components, and the corresponding discussion of Figure 3 in the specification. . .").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | | Date | August 20, 2008 |
|---|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | | |

However, Classified also argues that each of the compounds referred to in those lines could contain a vitamin plus one or more additional components (which could be additional vitamins), so long as the additional components are consistent with the vitamin's purposes as described in the specification.  (Tr., Apr. 7, 2008, at 8:10-13.)  It makes that argument because Del's products each contain at least three vitamins.  But there is no support for that construction of the claim.

Classified cites the MPEP definition of "comprising," but offers no support for the vague limitation it has placed on the open-ended nature of the term "comprising" -- namely, a supposed requirement that the additional components be consistent with the purposes of vitamins.  In effect, Classified proposes a construction of "compound comprising" that circumvents the closed list of ingredients imposed by the "cosmetic composition consisting of" claim.  It would have the open-ended word "comprising" nullify the closed "consisting of" language.  But it offers no evidence that claim 1 should be read in this manner.  To the contrary, the prosecution history indicates that both Classified and the Examiner placed particular emphasis on the fact that the "consisting of" language closed the claim to additional, unrecited ingredients.  *See supra* pages 8-9.  Similar to Classified's "impurities" theory, this argument contradicts the restrictive "consisting of" limitation.  Moreover, the use of the numeric words "first" and "second" to refer to the vitamins suggests that those claim limitations *only* allow up to two vitamins.  If an unlimited number of additional vitamins or other ingredients having compatible "purposes" could be included in those "compound comprising" limitations, the distinction between the first and second vitamins would make no sense.

For these reasons, the Court rejects Classified's theory that "compound comprising a. . .vitamin" could refer to more than one vitamin.

### D.     Del Is Not Liable for Literal Infringement

Classified has not proven and cannot prove any of its three theories of literal infringement: the impurities theory, the theory that the presence of the vitamins in the cosmetic composition satisfies the "compound comprising" language, and the theory that "compound comprising" can refer to single or multiple vitamins.  Given that the parties do not dispute the presence of more than two vitamins in each of the allegedly infringing Del products and Classified's failure to show that those vitamins read on the "compound

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | |

comprising" claim limitations, the Court finds that Del is entitled to a summary adjudication that it is not liable for literal infringement.

## V.    AFFIRMATIVE DEFENSE: INEQUITABLE CONDUCT

Classified seeks summary adjudication of Del's affirmative defense of unenforceability due to inequitable conduct.  Defendant did not brief this issue in its response to Classified's cross-motion.

In a response to an interrogatory, Del asserted the theories that the inventors, Mr. Berg and Ms. Halston, misrepresented to the USPTO that they were the owners and inventors of the subject matter of the '384 patent and that they failed to disclose material prior art, including Singleton.  (Slominski Decl., Ex. 29 at Interrogatory Response No. 28.)  Del has not come forth with any evidence to support those or any other theories of inequitable conduct.  Accordingly, the Court grants summary adjudication of this issue in favor of Classified.

## VI.    DECLARATORY JUDGMENT ON TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION

Del asserted three counterclaims seeking a declaratory judgment that Del (1) is not liable for patent infringement in connection with Del's Fast and Flawless line of products; (2) is not liable for trade dress infringement, trade libel, or false advertising in violation of the Lanham Act in connection with Del's Fast and Flawless line of products; and (3) is not liable for unfair competition in violation of California Business and Professions Code § 17000 *et seq.* in connection with Del's Fast and Flawless line of products.

On August 13, 2007, the Court held that it had subject matter jurisdiction over these claims based on a cease and desist letter that Classified sent to Del in which Classified threatened to sue Del for trade dress infringement and unfair competition based on the Fast and Flawless line of products.  (Minute Order, Aug. 13, 2007, at 23.)  The Court also held that Classified was not entitled to summary adjudication of Del's counterclaims because it failed to meet its burden of producing evidence to support its threatened trade dress and unfair competition claims.  (*Id.*)  Del now seeks summary

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | |

adjudication of counterclaims (2) and (3) in its favor because Classified still has not produced any evidence.

After Del filed its motion for summary adjudication, Classified filed a "Notice of Waiver of Certain Claims."[12]  By this notice, Classified waived trade dress and unfair competition claims based on the product identified in the letter of April 10, 2003 (the cease and desist letter) and referenced in ¶ 31 of Del's Answer to the FAC.  (*See* Ans. ¶¶ 31, 33; Slominski Decl., Ex. 42).[13]  In other words, Classified will not pursue those claims against the Fast and Flawless product.

Because the Notice of Waiver addresses precisely counterclaims (2) and (3) -- the Lanham Act and state law claims based on the Fast and Flawless products -- Del can no longer have any reasonable apprehension that it will be sued on those grounds for its manufacture and sale of the Fast and Flawless products.  Hence, the Court no longer has subject matter jurisdiction to render a declaratory judgment as to those two counterclaims.  (Of course, the Court retains jurisdiction over counterclaim (1), because that relates to whether Del can be liable for patent infringement based on the Fast and Flawless line.  In a preceding section of this order the Court held that Del cannot tbe found liable for such infringement.)   For these reasons the Court DENIES Del's motion for summary adjudication of these counterclaims.

//
//
//
//
//
//
//
//
//

## VII.  CONCLUSION

---

[12]Docket No. 509.

[13]The Answer incorrectly states the date of the letter as April 23, 2003.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-4818 AHM (PLAx) | Date | August 20, 2008 |
|---|---|---|---|
| Title | CLASSIFIED COSMETICS v. DEL LABORATORIES INC., *et al.* | | |

      For the foregoing reasons, the Court grants Del's motion for summary adjudication that it is not liable for infringing Classified's '384 patent and grants in part and denies in part Classified's cross motion.  Del shall file a "[Proposed] Judgment" consistent with this order, by not later than August 27, 2008.

:

Initials of Preparer      SMO